NO. 07-04-0058-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL E



JUNE 22, 2006



______________________________




GREGORY SHAWN BRYANT AND LINSEY KAY BRYANT,


INDIVIDUALLY AND AS REPRESENTATIVES OF THE ESTATE 


OF KENNALEE D'LIN BRYANT, A DECEASED MINOR,



 Appellants

v.



ERIC NICHOLAS LEVY, M.D., AMARILLO AREA HEALTHCARE


SPECIALISTS, L.L.P., NORTHWEST TEXAS HEALTHCARE


SYSTEM, INC.,



 Appellees

_________________________________



FROM THE 108TH DISTRICT COURT OF POTTER COUNTY;



NO. 89,510-E; HON. ABE LOPEZ, PRESIDING



_______________________________



Before QUINN, C.J., REAVIS, J., and BOYD, S.J. (1) 

ON MOTIONS FOR REHEARING


 Pending before the court are two motions for rehearing. The first is filed by Eric
Nicholas Levy, M.D., and Amarillo Area Healthcare Specialists, L.L.P. (AAHS). The
second is that of Northwest Texas Healthcare System, Inc. (Northwest). For the reasons
which follow, I would grant both and affirm the trial court's summary judgment for the
reasons which follow. Levy/AAHS

 The claims of negligence asserted by Gregory Shawn Bryant and Linsey Kay
Bryant, individually and as the representatives of the estate of Kennalee D'Lin Bryant
(Bryants), are founded upon two propositions. The first involves the purported duty of Dr.
Levy to insert chest tubes into the infant at 7:45 p.m. on the day she died. The second
concerns the duty to perform a chest x-ray on the infant approximately three and one half
hours earlier (i.e. 4:20 p.m.) to determine if she suffered from a pneumothorax. The
breach of these duties purportedly caused the death of the child. 

 Regarding the former, the Bryants concede their expert testified that the insertion
of the chest tubes at the time alleged would not have prevented the infant's death. 
Additionally, they cite to no evidence of record suggesting in any way that the infant would
have survived had the tubes been inserted. Thus, I am unable to find a material issue of
fact exists concerning whether the particular omission proximately caused the child's
death. 

 As for the alleged failure to take a chest x-ray at 4:20 p.m., its importance is
dependent upon the existence of a pneumothorax at that time. In other words, the Bryants
averred that had the x-ray been taken then, Levy would have discovered a pneumothorax,
treated the infant for same, and prevented her death. So, as can be seen, all is dependent
upon proof that the infant was suffering from a pneumothorax at 4:20 p.m. If she was not,
then the failure to order the x-ray and discover the pneumothorax could not be a
substantial factor in the death for there was no pneumothorax to discover. 

 More importantly, I found no competent evidence of record suggesting it was more
likely than not that the child suffered from a pneumothorax at that time. Indeed, comments
were made by the Bryant's expert suggesting the rupture could have occurred later. He
testified that 1) it was "possible" the pneumothorax occurred sometime after 4:20 p.m., 2)
the possibility was one that he could not "exclude," and 3) there was no way of knowing
(without a chest x-ray) whether the changes in Kennalee's situation at 4:20 p.m. were
caused by a pneumothorax or another malady she experienced. 

 Furthermore, while the expert did utter that "the worsening mechanics [experienced
by the child] were more likely than not caused by extra ventilatory air [i.e. a
pneumothorax]," he failed to explain the basis for his conclusion. Instead, he simply said
that "knowing that the child had a pneumothorax at 7:20 [p.m], and that at that time it was
under tension and it caused the child to arrest" he was "lead[] . . . to ask what is more likely
at 4:20 [p.m.], that the child had worsening disease, or had a pneumothorax that was
becoming symptomatic . . . ." Then he concluded by saying ". . . I think that the arrest
secondary to the pneumothorax indicates that worsening mechanics were more likely than
not caused by extra ventilatory air." Why the presence of a pneumothorax under tension
at 7:20 p.m. suggests a pneumothorax also existed three hours earlier goes unexplained,
and there lies the problem. Without that explanation I am, and the trial court was, left to
guess at the link. That very same void also renders the expert's opinion nothing more than
ipse dixit. (2) And, an expert's ipse dixit is not competent evidence sufficient to create an
issue of fact. See Earle v. Ratliff, 998 S.W.2d 882, 890 (Tex. 1999) (stating that "[a]n
expert's simple ipse dixit is insufficient to establish a matter; rather, the expert must explain
the basis of his statements to link his conclusions to the facts"); Marvelli v. Alston, 100
S.W.3d 460, 478 (Tex. App.-Fort Worth 2003, pet. denied) (stating the same). 

 In view of 1) the expert's testimony that it was possible the pneumothorax occurred
after 4:20 p.m. and 2) the absence of explanation underlying his opinion that it had
occurred by 4:20 p.m., I must conclude that no competent evidence of a pneumothorax at
4:20 p.m. appears of record. Without that evidence, I must also conclude that the Bryants
did not sufficiently link their child's death to Levy's purported failure to have an x-ray done
at that time.

 The motion for rehearing should be granted, and the trial court's judgment should
be affirmed.

 Northwest

 Of the several grounds urged by Northwest, I address only that involving the topic
of causation. Northwest argues that the Bryants failed to present evidence sufficient to
raise a question of fact regarding whether the conduct of Northwest's employees
proximately caused Kennalee's death. I agree.

 The Bryants attempted to establish the element in question through the testimony
of their expert. The latter offered statistics about the general survival rate of children who
contracted RSV and bronchiolitis, two ailments suffered by Kennalee. (3) Yet, it cannot be
ignored that the infant also suffered from a pneumothorax. Because she did, any statistics
involving the mortality rate of children who merely suffered from RSV and bronchiolitis fall
short of establishing that Kennalee would have survived but for the purported negligence
of Northwest's staff. See Botello v. McWhorter, No. 00 -07-0218-CV, 2001 Tex. App.
LEXIS 177 at *10 (Tex. App.-Amarillo January 10, 2001, pet. denied) (noting that before
statistics are probative on the issue of causation, their proponent must illustrate that the
circumstances or conditions of the person involved in the instant suit were similar to those
of people from whom the statistics were garnered). In other words, there must be a
comparison of apples to apples, not apples to oranges, before the findings are probative.

 Regarding the evidence that came closer to comparing apples to apples, I too find
it flawed. The evidence about which I speak is that of the expert wherein he said Kennalee
would not have had a cardiac arrest "had a pneumothorax been diagnosed at 4:20 [p.m.],
and had it been appropriately evacuated." While it suggests that the infant may have
survived, his opinion is nonetheless conditioned upon the discovery of a pneumothorax at
4:20 p.m. And, as discussed earlier, there is no competent evidence that Kennalee had
such a condition at that time. Accordingly, I would also grant Northwest's motion for
rehearing and affirm the summary judgment.


 Brian Quinn

 Chief Justice

 

 







 

NO. 07-04-0058-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL E



JUNE 22, 2006



______________________________




GREGORY SHAWN BRYANT AND LINSEY KAY BRYANT,


INDIVIDUALLY AND AS REPRESENTATIVES OF THE ESTATE 


OF KENNALEE D'LIN BRYANT, A DECEASED MINOR, APPELLANTS



v.



ERIC NICHOLAS LEVY, M.D., AMARILLO AREA HEALTHCARE


SPECIALISTS, L.L.P., NORTHWEST TEXAS HEALTHCARE


SYSTEM, INC., APPELLEES



_________________________________



FROM THE 108
TH DISTRICT COURT OF POTTER COUNTY;



NO. 89,510-E; HON. ABE LOPEZ, PRESIDING



_______________________________



Before QUINN, C.J., REAVIS, J., and BOYD, S.J. (4) 


ON MOTIONS FOR REHEARING



 I concur with the opinion of Chief Justice Quinn that the motion for rehearing of Eric
Nicholas Levy, M.D., and Amarillo Area Healthcare Specialists, L.L.P. should be granted
and the judgment should be affirmed as to Levy and Amarillo Healthcare Specialists,
L.L.P.; otherwise, as to Northwest Texas Healthcare System, Inc., I would overrule its
motion for rehearing and reverse that portion of the judgment of the trial court.


 Don H. Reavis

 Justice






 

NO. 07-04-0058-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL E



JUNE 22, 2006



______________________________




GREGORY SHAWN BRYANT AND LINSEY KAY BRYANT,


INDIVIDUALLY AND AS REPRESENTATIVES OF THE ESTATE 


OF KENNALEE D'LIN BRYANT, A DECEASED MINOR, APPELLANTS



v.



ERIC NICHOLAS LEVY, M.D., AMARILLO AREA HEALTHCARE


SPECIALISTS, L.L.P., NORTHWEST TEXAS HEALTHCARE


SYSTEM, INC., APPELLEES



_________________________________



FROM THE 108
TH DISTRICT COURT OF POTTER COUNTY;



NO. 89,510-E; HON. ABE LOPEZ, PRESIDING



_______________________________



Before QUINN, C.J., REAVIS, J., and BOYD, S.J. (5) 

ON MOTIONS FOR REHEARING


 For the reasons expressed in this court's original opinion, I remain convinced that
all the motions for rehearing should be denied. To the majority's decision to grant the
motion for rehearing filed by Eric Nicholas Levy, M. D., and the Amarillo Area Healthcare
Specialists, L.L.P. (AAHS), I respectfully dissent.


 John T. Boyd

 Senior Justice
1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't Code
Ann. §75.002(a)(1) (Vernon 2005). 
2. Ipse dixit is a label appended to matter that one asserted but failed to proved. Marvelli v. Alston, 100
S.W.3d 460, 478 n.6 (Tex. App.-Fort Worth 2003, pet. denied), quoting BLACK'S LAW DICTIONARY 833
(7th ed. 1999). 
3. The expert conceded that Kennalee's RSV and bronchiolitis were "very severe" and continued to
worsen after the infant entered the hospital. Whether the maladies of those comprising the test group from
which the statistics were taken were equally severe goes unmentioned. They may or may not have been.
4. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by
assignment. Tex. Gov't Code Ann. §75.002(a)(1) (Vernon 2005). 
5. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by
assignment. Tex. Gov't Code Ann. §75.002(a)(1) (Vernon 2005).